IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAKZIRI MALDONADO SANTANA,

    Defendant.

CRIMINAL ACTION NO.
1:17-CR-408-AT-RGV

## **ORDER**

Presently before the Court is Magistrate Judge Vineyard's Report and Recommendation ("R&R") [Doc. 60] recommending that the Court deny Defendant's Motions to Suppress [Docs. 20, 21]. The Defendant has filed objections to the R&R [Doc. 65].[1]

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard. The Defendant objects on numerous grounds to the Magistrate Judge's Report and

---

[1] The Defendant filed Objections to the R&R (doc. 64), and later Amended Objections to the R&R (doc. 65). In ruling on Defendant's Motions to Suppress, the Court considers the Defendant's Amended Objections (doc. 65).

Recommendation. In particular, the Defendant objects to the findings and recommendations reached by the Magistrate Judge:

- that Trooper Moremen had probable cause to justify stopping her vehicle;
- that the search of Ms. Santana's car was justified by a combination of probable cause and the automobile exception to the warrant requirement;
- that Defendant's statements given to law enforcement agents subsequent to their provision of appropriate *Miranda* warnings were voluntary and should not be suppressed;
- that Ms. Santana provided valid, free, and voluntary consent for the search of her cell phone.

Accordingly, the Court has reviewed the record in this case on a de novo basis. After an independent de novo review of the record, the Court agrees with the Magistrate Judge's R&R that Trooper Moremen had probable cause or reasonable suspicion to stop Ms. Santana; that the search of the car was justified by the automobile exception to the warrant requirement; that she was properly Mirandized and her statements post-provision of the *Miranda* warnings were voluntary; and that she provided valid, free, and voluntary consent for the search of her cell phone.

The Court finds that the Trooper Moreman had probable cause, or at least reasonable suspicion, to support stopping Ms. Santana's car. "A traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry v. Ohio*,

392 U.S. 1 (1968)." *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009) (citing *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir.2008)).

Trooper Moremen stated "over the radio that he was stopping the vehicle for weaving within its lane and because the vehicle appeared to have a dark window tint, not allowing him to see if the driver was wearing a seatbelt." (Doc. 60 at 20) (citing Gov. Ex. 1 at 22:10-22:47; Gov. Ex. 2 at 13:26:23-13:26:35; Gov. Ex. 2 at 13:32:32-13:32:37 (informing a backup officer who responded to the traffic stop that he had stopped Santana for window tint and failure to maintain lane)). Magistrate Judge Vineyard rejected Trooper Moremen's assertion that he had probable cause, at the time he initiated the traffic stop, to believe Ms. Santana was weaving within her lane and had committed a violation of O.C.G.A. 40-6-48(1). (Doc. 60 at 24.) But, he ultimately found that Moremen's "testimony established that he had probable cause to believe that the window tinting on Santana's vehicle violated Georgia law, which is all that is necessary to conduct a traffic stop." (*Id.* at 26.)

Ms. Santana argues that the traffic stop was not supported by probable cause. (Doc. 65 ¶¶ 5, 9.) She puts forth two primary objections in connection with her contention that the car's window tint under the factual circumstances did not give Trooper Moremen probable cause. First, she "objects to the assertion that Trooper Moremen positioned his vehicle so that he could view whether she had on a seatbelt" or see the window tint prior to stopping her. (Doc. 65 ¶ 5; Doc. 17 at 17.) Second, she contends that a possible window tint violation could not support

3

probable cause to stop her because Ms. Santana's vehicle was not in violation of Georgia law, and Trooper Moremen did not cite the tint on Ms. Santana's vehicle as an independent basis for stopping her vehicle.

First, the Court conducted an independent review of the aerial and dashcam footage[2] in this case to determine whether Trooper Moremen was close enough to Ms. Santana's car to clearly see whether Ms. Santana had on a seatbelt. The Court is hesitant to conclude that Trooper Moremen was close enough to Ms. Santana's car to see if she had buckled her seatbelt because Trooper Moremen does not get side-by-side to Ms. Santana's car. However, as a trained law enforcement officer, Moremen could have determined that her windows were tinted to some extent when he was driving in the parallel lane to Santana's car, though still behind her vehicle.

Regarding Ms. Santana's second objection that her window tint was not actually in violation of Georgia law (O.C.GA. § 4-8-73.1), the Eleventh Circuit has held that "police do not have to ascertain conclusively whether a window-tint violation had occurred before there is probably cause to investigate." *United States v. Reyes*, Criminal Case Nos. 1:11-cr-00009-ODE-RGV, 1:11-cr-00060-ODE-RGV, 2011 WL 7070980, at *6 (N.D. Ga. Aug. 29, 2011), adopted by 2012 WL 176488, at *6 (N.D. Ga. Jan. 19, 2012) (quoting *United States v. Alvardo*, No. 8:10-CR-348-T-30TGW, 2010 WL 5262736, at *4 (M.D. Fla. Nov. 17, 2010), adopted by 2010

---

[2] The dash cam footage begins just before Trooper Moreman initiated the stop. It thus does not reveal how close Trooper Moreman was to Ms. Santana when he approached her car in the left lane.

4

WL 5262735, at *1 (M.D. Fla. Dec. 17, 2010)); *see also United States v. Weaver*, 145 F. App'x 639, 641 (11th Cir. 2005) (per curiam) (unpublished). Here, while the Defendant's proffered evidence indicates that the tint degree would have fallen within legal limits, Officer Moremen's tint testing indicated the tint might likely be greater than legally permitted.

> Moreover, in a similar window-tint-stop case, Judge Evans held that:
>
> "Once it is established that probable cause objectively existed to stop the vehicle, for any valid reason, then it is irrelevant why the officer actually stopped it. *United States v. Arango,* 396 F. App'x 631, 632–33 (11th Cir.2010) (per curiam) ("Where objectively reasonable conditions permit a stop, the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment.") (internal quotation marks and citation omitted); *Miller v. Harget,* 458 F.3d 1251, 1260 (11th Cir.2006) ("It is well-settled that an officer's subjective motivations do not affect whether probable cause existed") (citations omitted). Thus, as long as the Officer had probable cause to stop the car based on its window tint, it does not matter whether he actually intended to or ultimately did test the vehicle's window tint."

*United States v. Reyes*, No. 1:11-CR-00009-ODE, 2012 WL 176488, at *2 (N.D. Ga. Jan. 19, 2012). Thus, while Ms. Santana may be correct that "[Trooper Moremen] wanted to stop the car, and he was looking for any reason to do so," (doc. 45 at 18) Trooper Moremen was able to establish that he had reasonable suspicion to stop Ms. Santana to investigate whether a window-tint violation had occurred.

Even if the Court were to find that there was insufficient evidence to support reasonable suspicion based on the tint, there is certainly enough to establish that Trooper Moremen had probable cause to stop Santana based on his understanding of the collective investigative observations imparted by the law enforcement agents

he was assisting.  Defendant Santana argues that "[t]he record does not demonstrate a sufficient degree of communication between the officers and Trooper Moremen to warrant imputation of the officers' knowledge to Trooper Moremen." (Doc. 65 ¶ 12.)  Specifically, the Defendant contends that "the record does not show that Trooper Moremen was in constant contact with the officers involved in the drug investigation." (*Id.*)  However, Trooper Moremen testified that "we were informed that a meet or a pickup had occurred, that the drugs that were supposedly being picked up had been picked up on that day." (Doc. 35 at 52-53.)  He confirmed that the other officers told him that they had seen an exchange take place, "that it was a female that had picked up the supposed narcotics," and that the narcotics would be in a black duffel. (*Id.* at 53.)  Moremen testified that "they were able to again identify a vehicle and a tag . . . that had picked up the narcotics and done the meet." (*Id.*)  This is enough communication to establish that the officers "maintained at least a minimal level of communication during their investigation," *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985), and that Officer Moremen had probable cause to stop Santana as well based on his fellow law enforcement officers' knowledge of Defendant's participation in unlawful drug distribution or transportation activity.

The Court agrees with the Magistrate Judge's analysis and findings that the police had probable cause or reasonable suspicion to search the vehicle; that Ms. Santana's post-Miranda statements were voluntary; and that she provided valid, free, and voluntary consent for the search of her cell phone.  The Court need not

conclude whether other factual findings made by the R&R not central to the ultimate finding are accurate for purposes of its review of the R&R, i.e. whether Ms. Santana used the word "ventana" to refer to crystal methamphetamine. (*See* Doc. 65 ¶ 3.) The Court though does not adopt any extraneous factual findings.

Accordingly, the Court **OVERRULES** Defendant's objections [Doc. 65]; **ADOPTS** the Magistrate Judge's R&R [Doc. 60], subject to the limitation above; and **DENIES** Defendant's Motions to Suppress [Docs. 20, 21].

The Court hereby sets the above case for trial beginning on April 15, 2019, at 9:30 AM in Courtroom 2308. The pretrial conference is set for April 10, 2019, at 10:30 AM in Courtroom 2308. Defendant is required to attend the pretrial conference or present a written waiver of his attendance. By March 20, 2019, the parties are to file any motions in limine and proposed voir dire questions. By March 20, 2019, the Government is to file a summary of the indictment for use in voir dire. By March 27, 2019, the parties are to file any objections to those items listed above. The time from January 30, 2019, to April 15, 2019, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The parties should be prepared to provide the Courtroom Deputy Clerk with three (3) copies of your respective exhibit and witness lists at the start of trial for use by the Judge, Court Reporter, and Courtroom Deputy Clerk. Each party should also provide a courtesy copy of all exhibits for the Judge's use during trial, preferably in an appropriately labeled notebook provided on the first day of trial.

The parties are referred to Local Rule 16.4(B)(19)(b), NDGa, concerning the pre-marking of exhibits.  The parties <u>must</u> provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Please refer to Judge Totenberg's Guidelines to Parties and Counsel at [http://www.gand.uscourts.gov/case-prep-judge-totenberg](http://www.gand.uscourts.gov/case-prep-judge-totenberg) for information regarding the pretrial conference, voir dire, and courtroom technology.  Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk.  The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed no later than three (3) days in advance of trial, to allow time for proper notification to the US Marshals Service.

**IT IS SO ORDERED** this 30th day of January, 2019.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**